450 So.2d 269 (1984)
Robert E. SNOW and Cynthia Snow, As Parents and Natural Guardians of Randall K. Snow, a Minor, Appellants,
v.
Chris NELSON and Jeannie Nelson, As Parents and Guardians of Mark Nelson, a Minor, and United Services Automobile Association, Appellees.
No. 83-737.
District Court of Appeal of Florida, Third District.
May 1, 1984.
*270 Horton, Perse & Ginsberg and Arnold Ginsberg, Huggett & Martucci, Miami, for appellants.
Gilmour, Morgan & Rosenblatt and Victor Lance, Miami, for appellees.
Before HUBBART, FERGUSON and JORGENSON, JJ.
JORGENSON, Judge.
This case involves the question of parental responsibility for injuries inflicted by a minor child. Because we are restrained by supreme court precedent, we affirm the trial court's direction of a verdict for the parents of the alleged tortfeasor. However, because we are unable to reconcile the precedential supreme court holding, or our own, with what we feel to be the dictates of justice and fairness and feel that it is time for a more enlightened approach to the questions involved, we respectfully certify to the Supreme Court of Florida that the present case passes upon a question of great public importance and warrants a re-examination of the principles announced in Gissen v. Goodwill, 80 So.2d 701 (Fla. 1955).

I
Fourteen-year-old Mark Nelson, who was not only older but was also a foot taller than his younger playmate, invited thirteen-year-old Randall Snow to play a game, of Mark's invention, that required two croquet mallets, two tennis balls and a street. The game consisted of each child's hitting his assigned tennis ball with a croquet mallet, repeatedly, until the ball reached a predetermined location down the street, upon which goal being reached, the direction of the race would be reversed and the process repeated until the return of the tennis balls to the point of departure. After the two children had been playing the game for awhile, Mark, who admitted that he saw "a person" in his path at the time, took what he described as a "fast swing" because Randall (who was younger and smaller but apparently faster) was winning. The game ended when Mark's errant swing hit Randall in the eye, resulting ultimately in its removal, as well as in the permanent termination of Randall's senses of smell and taste.
Randall's parents, the Snows, brought a tort action against Mark's parents, the Nelsons, and the Nelsons' liability insurer. The complaint premised recovery both on vicarious liability and the Nelsons' direct *271 negligence in controlling the conduct of Mark. At trial the issues were narrowed to the latter. Testimony revealed that Mark had a propensity to be rough with smaller children (the majority of his playmates), sometimes pushing or hitting them. Mark's father characterized reports to him of these incidents as "kids' tattling." He also testified that he had seen his son playing the game before and that he thought his son played the game frequently. At the close of the evidence the Nelsons and their liability insurer moved for a directed verdict. The trial court reserved its ruling until after the jury had retired, then granted the motion. The jury found Mark's parents seventy-five per cent at fault with total damages of $135,000.

II
One of the more inscrutable holdovers from the ancient establishments of the common law is the historically ubiquitous idea that a parent who has visited upon the world a tort-inflicting child ought not to be held financially responsible for the torts that the child has in turn visited upon those of us unfortunate enough to have gotten in the way. As Dean Prosser observed, "With the child usually quite irresponsible financially, and the parent not liable at all, the result has been a rather serious problem of uncompensated juvenile depredation ...," W. Prosser, Law of Torts § 123 (4th ed. 1971).[1] Nevertheless, when the Florida Supreme Court first confronted the issue several decades ago, it accepted as "basic and established law that a parent is not liable for the tort of his minor child because of the mere fact of his paternity," Gissen at 703, and sent forth without compensation the hapless gentleman a portion of whose finger had been severed from his hand by the playful antic of eight-year-old Geraldine Goodwill, see id. at 702, 705-06.
There are, however, as is generally true with harsh doctrine created in a distant and dissimilar era, judicial "exceptions" to the rule of parental irresponsibility. These are (1) the entrustment of a child with an instrumentality which, because of the child's lack of age, judgment or experience, may become a source of danger to others; (2) the existence of a relationship between the parent and child that is in fact a master and servant or principal and agent relationship; (3) a parent's knowing of and consenting to, directing or sanctioning a child's wrongdoing and (4) a parent's failing to exercise parental control over a child although the parent knows or in the exercise of due care should have known that injury to another is a probable consequence. E.g., Gissen at 703.
We feel that the facts of this case readily fall within the last and broadest of these "exceptions," which, indeed, is not an exception to vicarious liability but a recognition of direct parental responsibility, the duty of a parent to exercise reasonable control over the conduct of a child:
A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
(a) knows or has reason to know that he has the ability to control his child, and
(b) knows or should know of the necessity and opportunity for exercising such control.
Restatement (Second) of Torts § 316 (1965).
According to the encyclopedists and annotators, the facts recounted in the cases where courts have found evidence sufficient for a determination by the factfinder of parental negligence present a pattern wherein the injury inflicted by the child is one which reasonably should have been foreseen by the parent as likely to flow, as *272 a natural and probable consequence, from the child's course of conduct involving similar acts. See, e.g., 67A C.J.S. Parent & Child §§ 125-26 (1978); Annot., 54 A.L.R.3d 974, 992-1008 (1973 & Supp. 1983); 59 Am.Jur.2d Parent & Child § 133 (1971 & Supp. 1983). A survey of the various cases, though, reveals that the application of this similar acts rule is at times of sufficient breadth to conclude that if the rule ever existed universally, which is to be doubted, it has been transcended and replaced by a less restrictive case-by-case determination of parental negligence limited only by the broad bounds expressed in the Restatement.[2] Parents, therefore, are "responsible for [the] conduct [of their children] in so far as [they have] the ability to control it," Restatement (Second) of Torts § 316 comment a, and have the "opportunity" and know of "the necessity of so doing," id. comment b.[3] We feel that this broader rule, which we believe to be a requirement of reasonable care in the circumstances, *273 short of some form of vicarious liability,[4] is the better rule.

III
The fact pattern of Gissen, however, compels the conclusion that the supreme court had a somewhat restrictive application of the similar acts rule in mind when it addressed the issue in 1955. Julius Gissen brought an action against Geraldine Goodwill's parents, alleging that he was an employee of the Gaylord Hotel in Miami Beach and that the Goodwills were guests at the Gaylord. See Gissen at 702. The complaint further alleged that Mr. and Mrs. Goodwill negligently failed to restrain their child and
"that said parents had full knowledge of previous particular acts committed by their daughter about the hotel premises, such as striking, knocking down and damaging objects of furniture and furnishings and disturbing and harassing the guests and employees of the hotel and that the defendant Geraldine Goodwill did commit other wanton, wilfull and intentional acts of a similar nature to the act committed against the plaintiff, such as striking guests and employees of the aforesaid hotel, which acts were designed or resulted in injury [sic], so that the child's persistent course of conduct would as a probable consequence result in injury to another,"
id. Injury to another did result when little Miss Goodwill "`wilfully, deliberately, intentionally and maliciously'" swung a door "`with such great force and violence against the plaintiff ... that the middle finger on plaintiff's left hand was caught in the door and a portion of said finger was caused to be instantaneously severed and fell to the floor,'" id.
After examining seven cases that considered direct parental responsibility,[5] the supreme court found that "[o]ne common factor" allowing a finding of parental liability was a determination that "the child had the habit of doing the particular type of wrongful act which resulted in the injury complained of," Gissen at 705. "It is nowhere claimed," the court continued, "that the child here involved had a propensity to swing or slam doors at the hazard of persons using such doors," id., and, with a 4-0 ruling, affirmed the trial court's dismissal of the complaint, see id. at 706; accord Spector v. Neer, 262 So.2d 689 (Fla. 3d DCA 1972).[6]
The supreme court's analysis was not well received by contemporary commentators, one noting that

*274 the result is a rather inequitable one. While the parent, in this state, is not liable for the torts of his minor because of the mere fact of paternity, nevertheless, it would appear, that if it is plainly shown by the facts, that the child was actually possessed of vicious tendencies and the parents knew or should have known of them, then liability should attach, even though the specific wrongful conduct was not known to be habitual,
Torts, Third Survey of Florida Law, 12 U.Miami L.Rev. 469, 490 (1958), and another writing "[i]t is submitted that the parents of incorrigible children are lucky if their children are versatile in their wrongdoing. If their children lack ingenuity in their devilment, the parents may be held liable," Murray, Domestic Relations, Second Survey of Florida Law, 10 U.Miami L.Q. 317, 352 (1956). We agree. The supreme court's holding in Gissen, purporting to adopt the similar acts rule, but instead creating a "particular acts" rule, not only mandates a rule far narrower than the more enlightened rule expressed in the Restatement; we feel that as the rule was applied to the facts in Gissen even fact patterns where the injury should reasonably have been foreseen to flow, under the similar acts rule, as a natural and probable consequence from the child's course of conduct involving similar acts would be insufficient to survive a legal preclusion of submission to the factfinder. If the facts in Gissen were not sufficient for a determination that the child's course of behavior would naturally and probably result in injury, what facts could be?

IV
In Southern American Fire Insurance Co. v. Maxwell, 274 So.2d 579 (Fla. 3d DCA), cert. dismissed mem., 279 So.2d 32 (Fla. 1973), this court addressed a fact pattern wherein a five-year-old child, six days after the training wheels were removed from her new bicycle, rode it on a sidewalk, without her parent's permission, and into a woman walking on the sidewalk, see id. at 580. Rejecting an argument that the bicycle was a dangerous instrumentality, see id. at 581, this court stated that "[h]ere we have a 5 year old girl who for one month used a small bicycle with training wheels. Subsequently, one week after the receipt of a larger bicycle, she was permitted to ride it without the training wheels and out of the sight and supervision of her parents," id. "In these cases," this court continued, "the question of liability is to be determined on the broad basis of whether ... the parent has been guilty of negligence, that is, a failure to exercise due care in the circumstances," id., and affirmed the trial court's submission of the issue to the jury, see id.
In reaching its conclusion in Southern American Fire Insurance Co. this court cited to and was apparently persuaded by the fourth district's decision in Seabrook v. Taylor, 199 So.2d 315 (Fla. 4th DCA), cert. denied mem., 204 So.2d 331 (Fla. 1967), wherein the court stated that
the Gissen case does not hold specifically that those exceptions enumerated therein are exclusive. In all cases the question of liability is to be determined on the broad basis of whether ... the parent has been guilty of negligence, that is, a failure to exercise due care in the circumstances,
Seabrook at 317.
Implicit in these holdings is a rejection of the rule expressed in Gissen, both in its broader, similar acts, and narrower, particular acts, senses and an adaptation of what we here characterize as the reasonable care in the circumstances rule: a determination based upon the unique facts of each case and an application of the language of the Restatement.[7]

V
For the foregoing reasons, bound as we are by the supreme court's holding in *275 Gissen but being of the opinion that that holding is not supported by the weight of authority and that a more enlightened rule would better serve the needs of Florida's citizens, see Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), we affirm the trial court's order and certify that this case passes upon the following question of great public importance:
To what extent and in what manner may parents be held legally responsible for injuries inflicted by their minor children upon third parties?
Affirmed. Question certified.
FERGUSON, Judge (dissenting).
Judge Jorgenson has prepared an opinion which thoughtfully presents all pertinent facts and the law on the subject. My disagreement is with the interpretation or application of the law to these facts to take away a jury verdict.
Gissen v. Goodwill, 80 So.2d 701 (Fla. 1955), in my opinion, does not compel the conclusion reached by the majority. The Gissen holding, as noted by a sister court in Seabrook v. Taylor, 199 So.2d 315 (Fla. 4th DCA), cert. denied, 204 So.2d 331 (1967),[1] is limited to those cases where a plaintiff fails totally to plead a relationship between specific conduct of the child which causes injury to another and a lack of restraint on the part of the parents. To the contrary, however, the jury verdict finds support in Gissen.
In Gissen, our supreme court noted that there are four "broadly defined exceptions" to the general rule that a parent is not liable for the tort of his minor child. The fourth exception supports a finding of liability:
Where he [the parent] fails to exercise parental control over his minor child, although he knows or in the exercise of due care should have known that injury to another is a probable consequence. Gissen, 80 So.2d at 703.
The court interpreted this exception quite narrowly, holding that a cause of action against the parents for the tort of their minor child fails where "the negligence charged with relation to parental restraint is not claimed to flow from the commission of an act or course of conduct which the child habitually engaged in and which led to the appellant's injury." [e.s.] 80 So.2d at 705. There, the complaint was deficient because it did not allege that the child had a propensity to swing or slam doors, thereby causing injury.
The complaint in this case, apparently, did not suffer the pleadings defect which was fatal to the Gissen complaint. Further, the facts in the present case, unlike those in Gissen, do point to a course of conduct in which the child habitually engaged. There was, at trial, ample evidence that the minor child had a propensity to be rough at play with smaller children. Further, there was evidence that the violent propensities of the child to assault smaller children at play were known to the parents, and that the parents resisted suggestions that the child be restrained or corrected.
The cases cited by the majority, and relied upon by the court in Gissen, serve only to reinforce the conclusion that parental liability is appropriate here. See Ryley v. Lafferty, 45 F.2d 641 (D.Idaho 1930) (parents may be liable where child had habit of inveigling smaller boys into secluded places and there beating, bruising, maiming, and punishing them); Ellis v. D'Angelo, 116 Cal. App.2d 310, 253 P.2d 675 (Dist.Ct.App. 1953) (parents may be liable where son habitually engages in violently attacking and throwing himself forcibly and violently against other people); Condel v. Savo, 350 Pa. 350, 39 A.2d 51, 155 A.L.R. 81 (1944) *276 (parents may be liable where child is in habit of assaulting and mistreating smaller children and parents know of such habit yet encourage their son in such conduct); Norton v. Payne, 154 Wash. 241, 281 P. 991 (1929) (parents who knew about and encouraged child's habit of striking other children with sticks may be liable for injury).
The narrow question presented by this appeal is whether plaintiffs presented evidence tending to show that (1) defendant parents knew of their child's habit of assaulting smaller children while at play, and (2) the parents condoned such conduct by expressions of resentment or resistance to admonition by others. The evidence was sufficient to present a fact issue for the jury, and their findings should not have been overturned by the trial court as a matter of law. It is only in the absence of any evidence that a court should direct a verdict for a defendant. Hendricks v. Dailey, 208 So.2d 101 (Fla. 1968); Dandashi v. Fine, 397 So.2d 442 (Fla. 3d DCA 1981). I would reverse and reinstate the jury verdict.
NOTES
[1] There is, thus, little solace for the torted in Lord Kenyon's assertion that "[i]f an infant commit an assault, or utter slander, God forbid that he should not be answerable for it in a court of justice," Jennings v. Randall, 101 Eng. Rep. 1419, 1419 (1799). Nor is there, thus far, much solace to be found in statutory abrogation of the common-law rule of parental irresponsibility, the various statutes tending to limit severely financial responsibility. See Annot., 8 A.L.R.3d 612 (1966 & Supp. 1983).
[2] See, e.g., Ryley v. Lafferty, 45 F.2d 641 (D.Idaho 1930) (child with habit of persuading and inveigling smaller boys into secluded places and beating, bruising, maiming and punishing them persuaded and inveigled a smaller boy into a secluded place, forced him to undress and beat and bruised him with switches, sticks and straps); Bieker v. Owens, 234 Ark. 97, 350 S.W.2d 522 (1961) (child with habit of striking, beating and abusing younger children struck, beat and kicked another child); Ellis v. D'Angelo, 116 Cal. App.2d 310, 253 P.2d 675 (1953) (child with habit of violently assaulting and throwing himself forcibly against persons and violently shoving and knocking them pushed babysitter to the floor); Mitchell v. Wiltfong, 4 Kan. App. 2d 231, 604 P.2d 79 (1979) (child who had beaten, harassed and assaulted neighborhood children inflicted intentional mental distress, worry, concern, physical pain and suffering upon children and their parents); Moore v. Lexington Transit Corp., 418 S.W.2d 245 (Ky. 1967) (child who had on past occasions been permitted to open car door at a particular intersection opened car door at the same intersection, without permission, causing car door to strike moving bus); Caldwell v. Zaher, 344 Mass. 590, 183 N.E.2d 706 (1962) (child with habit of assaulting, accosting, tormenting and molesting young children assaulted, accosted, tormented and molested young child); Gudziewski v. Stemplesky, 263 Mass. 103, 160 N.E. 334 (1928) (child who had used an air gun, not a dangerous instrumentality, indiscriminately and mischieviously on three occasions by placing children in a line and pointing the air gun at them from a distance of ten or eleven feet, shooting at clothes hanging in the yard to dry and shooting at a shanty and birds, used the air gun to shoot another child in the eye); Lane v. Chatham, 251 N.C. 400, 111 S.E.2d 598 (1959) (child who had three times misused an air rifle, not a dangerous instrumentality, by shooting person in hip, shooting another person with match stems in arms and legs and chasing another person a couple of times while carrying air rifle without firing it, pointed air rifle directly at another person and shot him in the eye); Landis v. Condon, 95 Ohio App. 28, 116 N.E.2d 602 (1952) (child with vicious propensities and disposition jumped upon another child's back and threw the child to the floor); Sawyer v. Kelly, 194 Okla. 516, 153 P.2d 97 (1944) (child who was permitted to ride horse with only a halter to control the animal was riding the horse when it ran into an automobile); Condel v. Savo, 350 Pa. 350, 39 A.2d 51 (1944) (child with habit of mauling, pummelling, assaulting and mistreating smaller children threw another child down a steep and precipitous embankment); Bocock v. Rose, 213 Tenn. 195, 373 S.W.2d 441 (1963) (children who had a propensity to assault others assaulted and battered plaintiff); Eldredge v. Kamp Kachess Youth Servs., Inc., 90 Wash.2d 402, 583 P.2d 626 (1978) (children who had escaped from a group child care facility, whose legal standard of care was that of a parent, had stolen and abandoned an automobile and had committed a burglary, were apprehended and reassigned to the same facility, escaped again, stole an automobile and wrecked the automobile and its contents); Norton v. Payne, 154 Wash. 241, 281 P. 991 (1929) (child with habit of striking smaller children with sticks struck another child in the eye with a stick); Mazzocchi v. Seay, 126 W. Va. 490, 29 S.E.2d 12 (1944) (child who was given an air rifle, not a dangerous instrumentality, used the air rifle to shoot another child in the eye); Gerlat v. Christianson, 13 Wis.2d 31, 108 N.W.2d 194 (1961) (child who was permitted, without adult supervision, to use a readily accessible air rifle, not a dangerous instrumentality, shot playmate in the eye while child's father was present in another part of the house but had not ascertained that the air rifle was being used).
[3] We note that under the reasonable care approach the child need not be a tortfeasor for parental liability to attach. See Restatement (Second) of Torts § 316 comment c. This, of course, distinguishes the direct liability approach from vicarious liability where any liability of the parent would involve as a prerequisite a tortious child.
[4] By parental vicarious liability for the torts of children we envision something more than the $2,500 maximum liability that section 741.24, Florida Statutes (1983), places upon the parents of children who maliciously or wilfully destroy or steal property. The best approach appears to be that used in Louisiana where, unhampered by the common law, the Civil Code has since 1808 imposed strict liability upon a parent for the tort of a child. See Annot., 8 A.L.R.3d at 617-24 and the cases cited therein.
[5] Including four of those appearing in note 2, supra: Ryley, Ellis, Condel and Norton.
[6] We would be less than veracious if we did not point out that we are at a loss as to how the supreme court determined its "one common factor" and how it was able to so limit its holding based upon the fact patterns in the cases it cited. In Ryley and Ellis the "particular type of wrongful act" involved was in each instance considerably more general and all-encompassing than in Gissen. In Condel the tortious act was unprecedented. Only in Norton could the tortious act be said to have been arguably as narrow as the "particular type of wrongful act" involved in Gissen. Of the remaining three cases cited in Gissen, only Martin v. Barrett, 120 Cal. App.2d 625, 261 P.2d 551 (1953), an affirmance of the dismissal of the complaint upon a finding that there was "no previous wrongful act by the son in using the [air] gun alleged, or any prior knowledge by the mother that the son had improperly used the gun" and that the father knew neither of the circumstances of the injury or of any previous careless use of the air gun, id. at 628, 261 P.2d at 553, appears to approach the narrowness of the Gissen holding. Steinberg v. Cauchois, 249 A.D. 518, 293 N.Y.S. 147 (1937), was an affirmance of a jury determination of innocence. In Bateman v. Crim, 34 A.2d 257 (D.C. 1943), a directed verdict for the parents was affirmed where neither "boy had previously played with a football on the public streets or had conducted himself in other than an orderly manner," id. at 258 (emphasis added).
[7] Florida's courts have been quite creative in circumventing the harsh rule in Gissen, one court even going so far as to label a baby stroller a dangerous instrumentality. See Bullock v. Armstrong, 180 So.2d 479 (Fla. 2d DCA 1965).
[1] In Seabrook the court held that under all the evidence, the trial court properly submitted to the jury the question of whether the parents were negligent in keeping a loaded pistol in an unlocked place in a room to which a child had access. We adopted that court's interpretation of Gissen in Southern American Fire Insurance Co. v. Maxwell, 274 So.2d 579 (Fla. 3d DCA), cert. dismissed, 279 So.2d 32 (Fla. 1973) (whether parents failed to exercise their parental duty to ascertain if their five-year-old child was competent to control a two-wheel bicycle without supervision was question for the jury).