LETTS, Judge.
In this case, the trial court entered summary judgment in favor of a residential rehabilitation center for emotionally disturbed and ungovernable children, holding that the center was not liable for the intentional torts of its residents and “owed no duty ... as a matter of law” to the plaintiffs. We reverse.
The facts are so appalling that we are immediately on guard against the maxim that hard cases make bad law. Northern Securities Co. v. United States, 193 U.S. 197, 400, 24 S.Ct. 436, 486, 48 L.Ed. 679 (1904) (Holmes, J., dissenting). Two adolescent male inmates of the center disappeared without permission and while on the loose in the neighborhood overnight, came across two sibling victims aged four and six on the following day. This unhappy meeting resulted in a murderous attack upon the victims, culminating in the death of one and permanent brain damage to the other.
The two perpetrators of this bloody outrage had been “contracted” to the center which received compensation from the Youth Division of HRS for the one and from the parents of the other. The center has no bars nor any perimeter security *733 guards. Thus, while the inmates are not free to leave without permission, there is virtually nothing to prevent them from so doing. The laudable purpose of this facility is well described in the center’s brief as “a teaching program ... to create an atmosphere and those relationships ... usually associated with a family unit in an effort to help those youths in our society who could generally be described as ‘pre-delinquent,’ ‘delinquent’ or ‘emotionally disturbed’ ... in some manner ... disturbing to their family, school or community.”
The issue here is surprisingly simple and does not appear to justify the all-out war that has been waged for nine long years[1] involving four judges that have come and gone, three mistrials, two appeals and an excess of legal venom. As we see it, and as the center’s brief concedes, the center was emulating a “family unit” and the “house parents” or “teaching parents” sought “an atmosphere and environment akin to that generated by ordinary families” in a “teaching parent home.” Given all this self-description, it is clear that the center saw itself as a substitute parent and certainly its resident population was under its supervision and charge.
Having concluded that the center stood in loco parentis, we find it appropriate to apply Florida law on that subject. Generally, parents are not liable for the intentional torts of their children. Gissen v. Goodwill, 80 So.2d 701 (Fla.1955). There are, however, four exceptions to that pronouncement and it is the final one that the victims claim to be applicable here:
Where [the parent] fails to exercise parental control over his minor child although he knows or in the exercise of due care should have known that injury to another is a probable consequence.
Id. at 703.
Based upon that final exception and the facts, circumstances and pleadings attendant to the instant case, we conclude that it was error to enter a summary judgment in favor of the center. There is evidence in the record of “failure to exercise parental control” which precludes summary judgment. This evidence does not so much consist of the unsupervised ease with which the two murderous minors departed the center, but rather hinges on their known overnight absence, their repeated reported whereabouts the next day, before the crime took place, coupled with the absence of any attempt whatever to bring them “home.”
There is also evidence in the record of “injury to another as a probable consequence.” Paragraph eighteen of the complaint averred:
That on numerous occasions while the Defendants, DANA WILLIAMSON and ROLAND MENZIES, both minors, were residents of the Nova Living and Learning Center, said Defendants exhibited a propensity, tendency or proclivity (a) to behave in a physically violent manner, often abusing and injuring other residents of the Nova Living and Learning Center, (b) to behave in an uncontrollable manner, often carrying to extremes of physical violence activities which began or were initiated in the spirit of frivolity, (c) to oppress both physically and verbally, children smaller and younger than themselves, and (d) to escape or run away frequently from the Nova Living and Learning Center, often overnight, and while so at large, often committing offenses which would be considered crimes, if committed by adults.
The center conceded in its memorandum in support of the motion for summary judgment “that all the allegations of the complaints are admitted, save the use of the word ‘escape’.”
The center argues that even if the two minors did possess known violent proclivities, there was no evidence to suppose that a murder or a beating to the point of brain damage would take place. To this *734 end, the center likewise cites Gissen v. Goodwill, supra, for the proposition that the acts committed for which redress is sought must be similar to prior incidents so that those acts are habitual and repetitive. To that we respond that we deem the habit here, as framed in the complaint, to be a propensity for violence. Violence is the operative word and when it is unchecked (unlike the fights broken up in the center) it has a natural tendency to escalate. In our view, there is evidence in the record, and certainly in the complaint stipulated to, that the center had notice of a propensity for violence which would preclude the entry of a summary judgment under the exception contained in the Gissen v. Goodwill decision. We concede that the Gissen case can be interpreted to require a particularization of the type of violence, because in that case the court opined that prior knowledge of striking third parties did not impute knowledge of a propensity to slam a door thereby amputating a finger. We would be frank to admit that we find this distinction to be one without a difference because to us, as we have said, violence is violence.[2] However mindful of our subservient role, we distinguish Gissen by pointing out that the prior act here was beating upon other children, which is exactly what happened on this occasion with the exacerbated result as the only difference.
Nonetheless, we must bear in mind that the Supreme Court may disagree with our criticism of Gissen (a thirty year old case written by four justices long since departed) or even our attempt to distinguish it. We, therefore, certify the following question deeming it to be of great public importance:
DOES KNOWLEDGE OF A CHILD’S VIOLENCE REQUIRE A PARENT TO EXERCISE CONTROL TO AVOID INJURY TO ANOTHER CAUSED BY SUBSEQUENT VIOLENCE WHICH IS MORE SEVERE?
We find no reversible error in the remaining point on appeal.
REVERSED AND REMANDED.
DOWNEY and HERSEY, JJ., concur.

. Even in this court, the lawyers have successfully obtained postponements and delays total-ling 18 months.

. Obviously, the third district agreed in Snow v. Nelson, 450 So.2d 269 (Fla. 3d DCA 1984). Snow has also been certified to the supreme court, but as of this writing, oral argument has been had but no ruling handed down. This case should logically be considered together with Snow.