491 So.2d 1116 (1986)
NOVA UNIVERSITY, INC., et al., Petitioners,
v.
Josephine C. WAGNER, Etc., et al., Respondents.
No. 67160.
Supreme Court of Florida.
July 17, 1986.
*1117 John P. Kelly of Fleming, O'Bryan & Fleming, Fort Lauderdale, for Nova University, Inc. and Ins. Co. of North America.
Joseph H. Lowe of Marlow, Shofi, Conell, DeMahy, Valerius, Abrams, Lowe & Adler, Miami, for Janet Stevens, Charles Stevens and Chicago Ins. Co.
G. William Bissett of Preddy, Kutner & Hardy, Miami, for Dr. John Flynn.
Allan M. Rubin, P.A., Hollywood, Harry A. Gaines, P.A., and Joel D. Eaton of Podhurst, Orseck, Parks, Josefsberg, Easton, Meadow & Olin, P.A., Miami, for respondents.
PER CURIAM.
This cause is before us pursuant to the certification by the Fourth District Court of Appeal of a question it deemed to be of great public importance. Wagner v. Nova University, Inc., 473 So.2d 731 (Fla. 4th DCA 1985). We have jurisdiction pursuant to article V, section 3(b)(4), Florida Constitution.
The facts in this case as alleged in the complaints are as follows:[1] Nova University [hereinafter Nova] operates a residential rehabilitation program, Living and Learning Center [hereinafter Center], that accepts children whose continued residence with parents, foster parents or legal guardians has been determined to be against the best interests of the general public because of behavior problems. The children attend local public schools but are not otherwise allowed to leave the premises without permission. No security measures are maintained to enforce this policy, however. During the time material to this action defendant John M. Flynn was the executive director of the Center, responsible for policy and its implementation.
Two Center residents, Roland Menzies and Dana Williamson, were accepted as residents in 1974 and lived in a house with several other minors under the supervision of defendants Mr. and Mrs. Stevens, employees of Nova. Roland was accepted as an ungovernable child and Dana as an emotionally disturbed and delinquent child. Both, on numerous occasions while at the Center, exhibited a propensity toward physical violence, on occasion injuring younger children. They also frequently ran away from the Center. The defendants allegedly observed the boys' violent propensities and knew or should have known they had a propensity to commit acts which could normally be expected to cause harm to others.
The boys ran away from the Center on February 16, 1975, and remained at large for several days. On February 17, at approximately 6 p.m., they encountered Peter Wagner, 4, and Christy Wagner, 6, and beat them, killing Peter and leaving Christy with serious permanent injuries. The complaints allege that the defendants were negligent in failing to supervise and control Roland and Dana.
The childrens' mother brought wrongful death and personal injury actions. The trial court granted the defendants' motions for summary judgment, finding that as a matter of law they owed no duty to the plaintiffs. On appeal the district court reversed, finding that the Center stood in loco parentis to its residents and that the proper application of that theory precluded summary judgment for the defendants. The district court certified the following question:
DOES KNOWLEDGE OF A CHILD'S VIOLENCE REQUIRE A PARENT TO EXERCISE CONTROL TO AVOID INJURY TO ANOTHER CAUSED BY *1118 SUBSEQUENT VIOLENCE WHICH IS MORE SEVERE?
Wagner, 473 So.2d at 734. We restate the question as follows:
Does a child care institution that accepts as residents delinquent, emotionally disturbed and/or ungovernable children have a duty to exercise reasonable care in its operation to avoid harm to the general public?
We answer the restated question in the affirmative. We do not believe that the question of the defendants' duty in this instance need rest on the presumed existence of an in loco parentis relationship.[2] The Nova Living and Learning Center, for a fee, undertakes to rehabilitate children with emotional and behavior problems. We do not think it too onerous a burden to place upon it the duty to exercise reasonable care in carrying out its efforts. Restatement (Second) of Torts section 319 (1965), provides:
One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.
We find section 319, a statement of traditional tort principles, applicable. See Harper and Kime, The Duty to Control the Conduct of Another, 43 Yale L.J. 886, 895-98; 904-05 (1934).
We assume for purposes of this opinion that the Center is a socially desirable enterprise, and we express no view as to whether it was negligent. Neither do we pass judgment on the issue of proximate causation. We merely hold that a facility in the business of taking charge of persons likely to harm others has an ordinary duty to exercise reasonable care in its operation to avoid foreseeable attacks by its charges upon third persons. If reasonable care is exercised, there can be no liability. The alternative, the exercise of no care or unreasonable lack of care, subjects the facility to liability. Accordingly, we approve the decision of the district court for the reasons stated in this opinion.
It is so ordered.
ADKINS, EHRLICH, SHAW and BARKETT, JJ., concur.
McDONALD, C.J., dissents with an opinion, in which BOYD and OVERTON, JJ., concur.
OVERTON, J., dissents with an opinion, in which BOYD, J., concurs.
McDONALD, Chief Justice, dissenting.
The majority opinion imposes an unrealistic duty on and expects too much of persons and institutions striving to fulfill one of society's great needs. One of today's social dilemmas is how to deal with the exorbitant number of abused, neglected, dependent, and delinquent juveniles. The limited resources that government directs toward mitigating the adverse social consequences that this group faces have proven inadequate to cope with the problem. Unfortunately, the number and caliber of private institutions and people willing to assist these juveniles is also limited. Exposing those willing to furnish child care services to liability for the actions of their wards against third parties will further *1119 curtail the number and quality of those willing to participate.
We are not the first court to consider the proper scope of liability which institutions such as Nova should face when participating in social programs. In Henley v. Prince George's County, 60 Md. App. 24, 479 A.2d 1375 (1984), aff'd in part, rev'd in part, 305 Md. 320, 503 A.2d 1333 (1986), Prince George's County Community College ran a job training program for prison inmates from a mansion belonging to the college. One of the inmates, who resided at the mansion, sexually assaulted and murdered a 12-year-old boy on the mansion grounds and the boy's parents sued the college for negligence. In affirming a summary judgment in favor of the college, the Maryland appellate court explicitly recognized that to impose liability upon the college would discourage such institutions from participating in rehabilitation programs and thus would deprive former offenders of vitally needed assistance in their reentry into society. Likewise, who would be willing to accept a dependent or delinquent child into his home, care, or supervision if to do so would expose that person to liability for any injuries inflicted upon third parties by the youth while that youth was away from the premises and, consequently, away from supervision? Virtually none, I would say, because the cost of that risk would simply be too high.
The duty of care owed by the person or institution should only extend to those under its supervision. That duty should not extend to the public at large for the acts of the troubled youth. Indeed, several states have recognized the appropriateness of this limitation of liability. For example, in Eiseman v. State, 109 A.D.2d 46, 489 N.Y.S.2d 957, appeal denied, 66 N.Y.2d 602, 488 N.E.2d 116 (1985), Campbell, a former inmate who had been conditionally released from prison, enrolled as a student at State University College at Buffalo in a program for the economically and educationally disadvantaged. Campbell lived in a dormitory on campus with the son of his sponsor. A few months after entering the program, however, Campbell murdered several people in an off campus apartment. The victims included both students and a nonstudent. The representatives of the victims' estates brought suit against the college for negligence. Although the New York appellate court found that the college could be liable as to the estates of the deceased students, the court also ruled that the nonstudent's estate could not recover because the college did not owe the general public a duty of care. More specifically, the court ruled that the scope of the college's duty extended only to those in the college community who were within the zone of danger which the college created. See also Jesik v. Maricopa County Community College District, 125 Ariz. 543, 611 P.2d 547 (1980) (in order for liability to attach to college, a duty must be owed to the particular individual beyond the general duty owed to the public).
The question of "what about the rights of the innocent third parties?" should be raised. The duties owed to the victims of crime is an issue for which we seek a just solution. To a limited extent, Florida has recognized an obligation to provide compensation to the victims of crimes by enacting chapter 960, Florida Statutes (1981). In addition, judgments can be entered against the actual perpetrators of the crimes. Courts frequently, as a portion of a criminal penalty imposed on the perpetrator, require payment to the victims of a juvenile's crimes. I do not suggest that any of these alternatives provides full and just compensation to the victims of the crimes involved in this litigation. I do suggest, however, that, when balancing the benefits against the costs, society would be better served in the long run by not placing the responsibility for injuries to third persons on the party assuming parental control of a minor when the injuries are inflicted outside that party's direct supervision.
There may be a justification for modifying this view when such a person or institution knows of a child's proclivity to perform a specific act and where that specific conduct causes the injury. Such a result would be consistent with our parenting responsibility *1120 cases of Snow v. Nelson, 475 So.2d 225 (Fla. 1985), and Gissen v. Goodwill, 80 So.2d 701 (Fla. 1955). Nevertheless, imposing a general duty to third parties for acts not actually known or anticipated is going too far. A person or institution acting as a parent should have no greater duty than does a parent. I believe that Snow and Gissen should apply here and that we should adhere to the so-called restricted view of those cases. I would quash the decision of the district court and reinstate the summary judgment entered by the trial judge.
BOYD and OVERTON, JJ., concur.
OVERTON, Justice, dissenting.
I agree with Justice McDonald's dissent. Given the same conduct of the child, the parent and the child care institution should have the same duty of care. I find no justification for placing a higher duty of care on an institution which has accepted responsibility for a child's care than on a parent with that same responsibility. In my view, the majority opinion will probably raise the cost of child care and could reduce the availability of these services.
BOYD, J., concurs.
NOTES
[1] For the purpose of the summary judgment motion, Nova admitted in its memorandum to all of the allegations of the plaintiffs' complaints save use of the word "escape." The other defendants made a similar admission in their memorandum, arguing that assuming all of the plaintiffs' allegations can be proved, the defendants did not owe a duty to the plaintiffs. We will paraphrase selected allegations from the complaints. John Flynn is a defendant in the personal injury action only.
[2] "[A] person in loco parentis is one who intentionally accepts the rights and duties of natural parenthood with respect to a child not his own." In re Diana P., 120 N.H. 791, 794-95, 424 A.2d 178, 180 (N.H. 1980), cert. denied, 452 U.S. 964, 101 S.Ct. 3116, 69 L.Ed.2d 976 (1981). Whether the parental relationship has been assumed is normally a question of fact suitable for resolution at trial. See 59 Am.Jur.2d, Parent and Child, § 88 (1971). Key factors that are hallmarks of the in loco parentis relationship are the intentional assumption of obligations incidental to the parental relationship, especially support and maintenance, State v. Pittard, 45 N.C. App. 701, 263 S.E.2d 809 (Ct.App.), review denied, 300 N.C. 378, 267 S.E.2d 682 (1980), and psychological bonding, In re Diana P. Plaintiffs alleged a parental relationship in their complaints against the Stevens and Nova but not in their complaint against Dr. Flynn. In view of our holding in this case, the establishment of an in loco parentis relationship is not a necessary element of the plaintiff's cause of action.