741 So.2d 629 (1999)
Tawana THOMPSON, individually and as natural parent and legal guardian of the minor child, Stephen Thompson, Appellants,
v.
Ramon BANIQUED and Julieta Baniqued, individually, and as parents and legal guardians of Christopher Baniqued, a minor, Appellees.
No. 98-2858.
District Court of Appeal of Florida, First District.
September 28, 1999.
*630 James T. Miller, Jacksonville, for Appellants.
Robert E. O'Quinn, Jr., of Webb, O'Quinn & Murphree, P.A., Jacksonville, for Appellees.
ERVIN, J.
Appellants, Tawana Thompson and her son, Stephen Thompson, appeal the summary final judgment entered against them in favor of appellees, Ramon, Julieta and Christopher Baniqued, contending that the trial court erred in concluding that the Baniqueds did not owe a duty of care to Stephen Thompson who had been playing in the Baniqueds' front yard before crossing the street and being struck by a car. We affirm.
Reciting the facts in the manner most favorable to the plaintiffs below, as is required of appellate courts in reviewing summary final judgments, we note that on June 3, 1996, three-year-old Stephen Thompson was hit by a car in the street in front of his home and severely injured. The area is residential/suburban, intersected with a wide street that is relatively quiet except when people commute to and from work. Stephen's mother, Tawana Thompson, had lived in the residence for about two months with her mother, Mrs. Greenaway, and stepfather, her sons Stephen and De`Angelo Simmons, aged 11, and her brother, Bryan, 33. The children were usually placed in the care of Mrs. Greenaway after school while Thompson was at work. On this day, Mrs. Greenaway attended a revival and the children were under the supervision of Thompson's stepfather until he went to work at 6:30 p.m., and were thereafter left with Thompson's brother.
The defendant, Julieta Baniqued, who resided across the street from the plaintiff's home, was working in her rose garden at around 6 or 6:30 p.m. while her two sons, Christopher, 14, and Andrew, 9, played basketball on their home court, which was approximately three or four car-lengths from the street. Baniqued usually worked in the front yard if the children were playing basketball in order to keep an eye on them and be available, as she never let her children play outside without adult supervision. Mrs. Baniqued testified that she checked on her children periodically, and noticed that De`Angelo and Stephen had come over to her yard. She did not say anything to them, but simply let them play, and at some point told all the children to be careful and watch for cars. She said she was not babysitting the neighbor's children, but that she did have some concern about the risk of young Stephen going into the street. Baniqued related that De`Angelo and Stephen had come over to her home about four or five times before, and that she had never been asked to watch them, either in the past or during that particular evening. The children played for about 30 to 45 minutes. Baniqued did not see Stephen go into the road, but heard a thump and saw De`Angelo carrying Stephen to his yard.
De`Angelo testified that he asked his uncle Bryan if they could play basketball with the Baniqued boys, and Bryan agreed if the Baniqueds' parents did. Bryan, who was ill, subsequently went to sleep. *631 De`Angelo looked both ways and held Stephen's hand to cross the street. De`Angelo and Stephen had been playing for a while when their mother, Tawana Thompson, pulled into her driveway across the street and got out of the car. The children and their mother waved at each other, and Stephen said he wanted to go over there. De`Angelo said he and Christopher Baniqued told Stephen to wait, and when there were no cars, they each said he could go, whereupon Stephen crossed the street. De`Angelo then saw a car coming and called to his brother, but Stephen ran across and was struck by the car and injured. De`Angelo carried Stephen to his front yard, where Baniqued, who was a nurse, gave him CPR and resuscitated him. De`Angelo said he had been to the Baniqueds' about 30 times in the past. When asked whether anyone was in charge on that particular day, he did not answer.
The trial court ordered summary final judgment for the Baniqueds, finding that they owed no duty of care to Stephen Thompson. We agree.
Appellants contend that Julieta Baniqued owed a duty of care to Stephen pursuant to the rationale regarding "zones of risk" stated in McCain v. Florida Power Corporation, 593 So.2d 500 (Fla.1992), wherein the court stated that "a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others." Id. at 503 (footnote omitted). Mrs. Baniqued did nothing that created a risk of harm to Stephen. Stephen placed himself in a zone of risk, or, as applied to the facts of this case, his caretakers did by failing to supervise him. The law does not require persons to protect others from danger, unless such persons themselves created the danger. Indeed, the trial court quoted from the Restatement (Second) of Torts § 314 (1965), regarding the "Duty to Act for [the] Protection of Others":
The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action.
Exceptions exist when the actor creates the danger or there is a special relation between the actor and a third person. Sections 314A and B provide that the following special relations give rise to a duty to aid or protect: common carriers to passengers, innkeepers to guests, possessors of land to invitees, custodians to those in custody, and employers to employees.
Appellants contend that Mrs. Baniqued had custody of Stephen because she permitted him to play in her yard. Certainly, if the children had been playing in Mrs. Baniqued's house with her knowledge, or if she had affirmatively consented to have the children over, she could be found to have custody of them. We decline, however, to conclude, nor have we found any case law wherein a court has so held, that a neighbor is responsible for another neighbor's child who is injured in the street, simply because the child had wandered into and played in the neighbor's yard.
Appellants contend that Baniqued could have discharged her duty by refusing to permit Stephen to play in her yard or by notifying his custodian. Stephen's uncle, however, had already given the child permission to go over to the Baniqued's residence, regardless of whether Julieta Baniqued consented. Instructing a three-year-old to leave one's yard would likely fall on deaf ears, as would telling him to be careful, or warning him of particular risks. That the child's uncle had abdicated responsibility for Stephen's care did not thereby mean that other neighborhood adults who encountered him automatically owed him a duty of protection.
Contrary to appellants' next assertion, Julieta Baniqued did not voluntarily assume the duty of supervising Stephen by undertaking the job of "visual guard or sentinel," by staying in her front yard and telling the children to be on the watch for cars. In fact, this is simply a rephrasing *632 of appellants' first point, and adds no legally significant facts. By conscientiously supervising her own children, Mrs. Baniqued did not thereby "voluntarily undertake" the responsibility of supervising Stephen, merely because she was in a position to see that he needed supervision.
Finally, appellants contend that Christopher Baniqued was negligent in allowing Stephen to cross the street; therefore, Mrs. Baniqued is liable for the negligent supervision of Stephen by her son. The trial court did not address this allegation in its summary judgment order. Nevertheless, the pleading failed to make this allegation adequately, and the evidence failed to establish that Baniqued owed Stephen a duty under such theory.
A parent is not liable for the torts committed by his or her children unless (1) the parent entrusts the child with a dangerous instrumentality; (2) the child is acting as the parent's agent in committing the tortious act; (3) the parent knows of and consents to the child's tortious act; or (4) the parent fails to exercise control over the child when injury to another is a possible consequence. Snow v. Nelson, 475 So.2d 225 (Fla.1985); Gissen v. Goodwill, 80 So.2d 701 (Fla.1955). Appellants alleged in their complaint that Mrs. Baniqued was liable for negligently supervising her son Christopher, because Christopher instructed Stephen that the roadway was clear and that he could cross. They contend in their brief on appeal that Baniqued's negligent supervision was encompassed by exception (4) above, because Mrs. Baniqued owed a duty to supervise Christopher so that he would not negligently advise Stephen that it was safe to cross the street.
In Snow, however, the court, following Gissen, stated that to prevail on a cause of action for parental negligent supervision of a child under exception (4), the plaintiff must plead and prove "that the child had a habit of engaging in a particular act or course of conduct which led to the plaintiff's injury." Snow, 475 So.2d at 226. Appellants in the case at bar failed to plead such fact, and there was no evidence of same.
Appellants contend that the above requirement applies only to intentional torts committed by the child. On the contrary, the court in Gissen adopted the following requirement from the Restatement of Torts, which addresses both negligent and intentional conduct of a child.
A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk or bodily harm to them, if the parent
(a) knows or has reason to know that he has the ability to control his child, and
(b) knows or should know of the necessity and opportunity for exercising such control.
Restatement (Second) of Torts § 316 (1965). The court in Gissen discussed many cases involving both negligent and intentional conduct of a child. The child's conduct in Snow involved the injury of another child by the former's negligent swinging of a croquet mallet. Snow v. Nelson, 450 So.2d 269 (Fla. 3d DCA 1984). In fact, the plaintiffs in Snow asked the supreme court to recede from this requirement, but the court expressly declined. Snow, 475 So.2d at 226.
To conclude, the plaintiff must show that the child of another parent had a propensity to engage in the particular conduct that harmed another child before the parent of such child can be held liable for allowing it. Appellants did not allege, nor was there any evidence whatsoever, that Christopher had a propensity to give younger children advice or instruct younger children on crossing the street. Accordingly, the final summary judgment is
AFFIRMED.
MINER and KAHN, JJ., CONCUR.