William **PEREZ** and Marcia Perez, as **Personal Representatives of The Estate of Daniel Alejandro Perez, Deceased, Appellants,**

v.

Enrique **RODRIGUEZ, Sr. and Lori Baglio Rodriguez, Husband and Wife, Appellees.**

Nos. 4D14–935, 4D14–1250, 4D14–3656.

District Court of Appeal of Florida, Fourth District.

Nov. 9, 2016.

Stephen F. Rosenthal and Ramon A. Rasco of Podhurst Orseck, P.A., Miami, for appellants.

Carlos A. Velasquez and Alejandro Larrazabel of Velasquez Dolan Arias, P.A., Fort Lauderdale, for appellees.

Dorothy V. DiFiore of HD Law Partners, Tampa, and Caryn L. Bellus of Kubicki Draper, P.A., Miami, for Amicus Curiae the Florida Defense Lawyers' Association.

CIKLIN, C.J.

William and Marcia Perez ("the Perezes"), as Personal Representatives of the Estate of Daniel Alejandro Perez ("Danny"), appeal a final judgment in favor of Enrique Rodriguez, Sr. ("Mr. Rodriguez") and Lori Baglio Rodriguez ("Mrs. Rodriguez"). Mr. and Mrs. Rodriguez cross-appeal orders denying each of their motions for attorney's fees and costs. We affirm on all issues raised by the parties, but we write to address the grant of summary judgment on a negligent supervision claim brought against Mrs. Rodriguez.

The instant appeal arises from a wrongful death action brought against the Rodriguezes by the Perezes after their son, Danny, was killed by injuries sustained in a tragic accident when Danny fell off of an all-terrain vehicle ("ATV") driven by the Rodriguezes' son, Ricky, who was not injured. Both boys were sixteen at the time of the incident, and neither boy was wearing a helmet.

The facts that follow were revealed largely through the deposition testimony of various parties and experts involved in the case. The ATV that the boys were riding is owned by Mr. Rodriguez. It is capable of traveling up to approximately 65 miles per hour and was designed for a single rider. The ATV was a surprise gift for Ricky. Mr. Rodriguez never rode on the subject ATV, and Mrs. Rodriguez rode on it with Ricky twice, but did not wear a helmet on those occasions. Prior to the incident, no one other than Mrs. Rodriguez rode as a passenger on the ATV.

Ricky was required to ask for permission before riding his ATV and was not

allowed to ride it unless one of his parents was home. Before the incident, Ricky had not disobeyed his parents with regard to the ATV. The Rodriguezes moved into a new home in Southwest Ranches approximately two days before the incident, but had stored Ricky's ATV as well as another ATV at their new home for several months prior to the move. At their previous home in Davie, the ATV keys were kept in a desk drawer with a lock and key. Thus, prior to the move, Ricky could not access his ATV unless one of his parents drove him to their Southwest Ranches home. Once they moved into the Southwest Ranches home, the ATV keys were kept in an unlocked drawer in Mrs. Rodriguez's office.

On the day of the incident, Danny's father dropped him off at the Rodriguezes' new home. Ricky's mother was home at the time, but his father was not. Danny had been a guest at the Rodriguezes' prior residence approximately five times in the past. At some point on the fateful day, while the boys were swimming, Danny requested to ride the Rodriguezes' ATVs, but Ricky said no, indicating that he was not allowed. Ricky's mother then served lunch to the boys and told them to get out of the pool and call Danny's parents. She was leaving soon to run errands and did not want the boys home alone together. She left the boys at the house around 3:30 p.m. A few minutes later, she called Ricky and confirmed that Danny had called his father, and Ricky assured her that Danny would leave when they finished eating lunch. Prior to that day, Mrs. Rodriguez had never left Ricky at home alone with a friend.

Approximately forty-five minutes later, the boys went into the garage, at which point Danny again requested to ride the ATVs and Ricky, this time, was agreeable. Ricky had one helmet, but it did not fit

Danny, so he did not wear it. Ricky did not wear the helmet because he did not want the helmet to hit Danny in the head, since Danny would not be wearing a helmet.

Danny wanted to ride one ATV while Ricky rode the other, but Danny was wearing shorts and Ricky didn't want him to burn his legs on the exhaust. As a result, they agreed that Danny would ride on the back of Ricky's ATV, since his legs would not hit the exhaust while riding as a passenger. While traversing neighboring lots, Danny let go a few times before the accident, and Ricky instructed him to hold on tight, with Danny's arms around Ricky's waist.

When the accident occurred, the boys were riding on a grassy shoulder off of 172nd Avenue. Ricky felt Danny's grip release and Danny fell off of the ATV. Ricky then ran to him and began administering CPR. Sadly, Danny never regained consciousness. An internal autopsy was not performed, but a forensic pathologist performed an external examination and determined that Danny died from blunt force trauma to the head. He opined that fractures to Danny's skull and neck were caused by his head striking soft ground. It is unclear why Danny fell off of the ATV. The investigating detective opined that the ATV was traveling at approximately 20–30 miles per hour at the time of the accident and that the accident was not the result of driver error.

■ Following the accident, the Perezes filed a complaint against the Rodriguezes asserting, among other claims, a count for negligent supervision against Mrs. Rodriguez. Mrs. Rodriguez moved for final summary judgment contending that, in accordance with Florida law, she was under no duty to supervise the sixteen-year-olds. As to this issue, the trial court granted summary judgment, reasoning as follows:

At the hearing the Defendants[ ] contest[ed] the Plaintiffs' assertion that because the boys were minors, the Defendants[ ] were negligent in supervising them. The Plaintiffs claim that the Defendants owed their son a duty of reasonable care as a social visitor in their home, and that when Ricky's mother received Danny at the door she undertook a duty to supervise him as a minor in her care. The Plaintiffs also claim that the Defendants failed to supervise their own son Rick[ ]y on the day of the accident. Florida courts have recognized that adults have a duty, as ordinary prudent persons, to watch over and supervise children too young to exercise judgment to care for themselves and protect them from foreseeable hazards and harm. *Orlando Sports Stadium, Inc. v. Gerzel*, 397 So.2d 370 (Fla. 5th DCA 1981). This Court finds that a 16–year–old is not "too young to exercise judgment." Thus, the Defendants should not be held liable for the supervision of the Plaintiffs' son when he was a visitor in their home.

On appeal, the Perezes argue that the trial court erred in entering summary judgment on the negligent supervision claim because material issues of fact precluded summary judgment. We must disagree.

 "The existence of a duty of care is generally a question of law to be determined by the court...." *Schwartz v. Wal-Mart Stores, Inc.*, 155 So.3d 471, 473 (Fla. 5th DCA 2015). "The general rule is that a party has no legal duty to 'prevent the misconduct of third persons.'" *K.M. ex rel. D.M. v. Publix Super Markets, Inc.*, 895 So.2d 1114, 1117 (Fla. 4th DCA 2005) (quoting *Michael & Philip, Inc. v. Sierra*, 776 So.2d 294, 297 (Fla. 4th DCA 2000)). "'Florida courts have long been loath[ ] to impose liability based on a defendant's failure to control the conduct of a third par-

ty.'" *Id.* (quoting *Boynton v. Burglass*, 590 So.2d 446, 448 (Fla. 3d DCA 1991)).

 It is "'basic and established law that a parent is not liable for the tort of a minor child because of the mere fact of paternity.'" *Snow v. Nelson*, 475 So.2d 225, 226 (Fla.1985) (quoting *Gissen v. Goodwill*, 80 So.2d 701, 703 (Fla.1955)). However, there are four broadly defined exceptions wherein a parent may incur liability:

(1) [W]here the parent entrusts the child with an instrumentality which, because of the child's lack of age, judgment, or experience, may become a source of danger to others; (2) where the child committing the tort is acting as the servant or agent of its parents; (3) where the parent consents, directs, or sanctions the wrongdoing; and (4) where the parent fails to exercise control over the minor child although the parent knows or with due care should know that injury to another is possible.

*Id.* at 226.

The first exception is not at issue, since no evidence was presented of "entrustment" or that Ricky's age, judgment, or experience with the ATV contributed to the incident. The second and third exceptions are also not applicable to the case at hand. It was not alleged that Ricky was acting as his parents' agent or that his parents consented, directed, or sanctioned Danny or any other guest driving or riding with Ricky on the ATV. In fact, Ricky was explicitly directed *not* to ride the ATV unless a parent was home and had heretofore required a parent's permission to use the ATV at all.

 In order for the fourth exception to apply, the child must be in "the habit of doing the particular type of wrongful act which resulted in the injury complained of." *Gissen*, 80 So.2d at 705. In *Gissen*,

the tortfeasing child intentionally swung a door with such force against the plaintiff hotel employee's hand that part of his finger was severed. *Id.* at 702. It was alleged that the parents were aware of the child's previous acts of striking, knocking down, and damaging hotel furnishings, as well as striking hotel guests and employees. *Id.* The court held that the parents could not be held liable, since it was not alleged that the child "had a propensity to swing or slam doors at the hazard of persons using such doors." *Id.* at 705.

In *Snow*, the Florida Supreme Court held that the parents of a minor child were not liable for injuries their child inflicted on a younger and smaller child by hitting the child with a croquet mallet. 475 So.2d at 226. Although there was evidence that the older child had a known propensity for pushing and hitting smaller children, there was no allegation that the child previously engaged in the act of swinging a croquet mallet. *Id.* The court specified "that *Gissen* will continue to be the rule in determining whether parents are legally responsible for injuries inflicted by their minor children upon third parties." *Id.* It posited a narrow application of the rule and explained that "the cause of action must allege that the child had a habit of engaging in *a particular act or course of conduct* which led to the plaintiff's injury." *Id.* (emphasis added). "Parents, therefore, are 'responsible for [the] conduct [of their children] in so far as [they have] the ability to control it,' Restatement (Second) of Torts § 316 comment a, and have the 'opportunity' and know of 'the necessity of so doing,' *id.* comment b." *Snow v. Nelson*, 450 So.2d 269, 272 (Fla. 3d DCA 1984) (alterations in original).

Here, the injury occurred as a result of Danny falling off of the ATV. Just as in *Gissen* and *Snow*, where the parents were not aware of the specific behavior resulting in injury, Mrs. Rodriguez was not aware of anyone falling off of the back of the ATV, and thus was not aware of the necessity to control Ricky's behavior to that extent. Further, Ricky had never taken a friend on the ATV, nor did he ever ride it while his parents were not home or without their permission. Therefore, Ricky did not have—nor was it alleged that he had—a "habit of doing the particular type of wrongful act which resulted in the injury complained of." *See Gissen*, 80 So.2d at 705. Thus, we cannot conclude that Mrs. Rodriguez had a duty to control Ricky with respect to the fateful act in question.

Consequently, we affirm the trial court's entry of summary judgment on the count of negligent supervision against Mrs. Rodriguez and with respect to all other issues raised.

*Affirmed.*

LEVINE, J., concurs.

FORST, J., concurs specially with opinion.

FORST, J., concurring specially.

I concur in the Court's opinion. I write to specifically add that, in concluding that the trial court properly granted summary judgment with respect to the Perezes' claim that Mrs. Rodriguez consented, directed, or sanctioned "wrongdoing" on the part of Ricky by virtue of her testimony that she rode as a passenger with her son for "maybe fifteen or twenty minutes" in the family's lot shortly after the ATV was purchased, it is noteworthy that, in addition to the fact that "Ricky was explicitly directed *not* to ride the ATV unless a parent was home and heretofore required a parent's permission to use the ATV at all," Mrs. Rodriguez further testified (without contradiction) that she never otherwise discussed, observed, or permitted

Ricky to drive or ride his ATV with another passenger.