683 So.2d 1086 (1996)
The LIGHTHOUSE MISSION OF ORLANDO, INC., et al. Appellants,
v.
ESTATE OF Christine McGOWEN, etc., et al., Appellees.
No. 95-3144.
District Court of Appeal of Florida, Fifth District.
November 15, 1996.
Rehearing Denied December 13, 1996.
*1087 Robert E. Bonner of Eubanks, Hilyard, Rumbley, Meier & Lengauer, P.A., Orlando, for Appellants.
Sharon Lee Stedman of Sharon Lee Stedman, P.A., Orlando, for Amicus Curiae Florida Defense Lawyers Association.
James R. Lavigne of Lavigne & Lane, P.A., Orlando, for Appellees.
PER CURIAM.
The Lighthouse Mission of Orlando, Inc. ("the Mission") and Margaret Powell, its founder and executive director, timely appeal the final judgment and order denying their motion for judgment notwithstanding the verdict and new trial in favor of the Estate of Christine McGowen ("the Estate"). The judgment awarded the Estate $1.5 million following a trial in which the jury found the Mission and Powell negligent after one of the Mission's residents, an ex-convict with a history of sexual crimes, raped and murdered 11 year old McGowen, who lived next door to the Mission. While the Mission and Powell make eight arguments on appeal, only one merits discussion. They contend that the Estate failed to establish that the Mission and Powell owed a legal duty to the plaintiff, and thus, the trial court erred in failing to direct a verdict in their favor. We agree and reverse.

THE FACTS
In 1983, Elmer Leon Carroll was convicted of sexual assault upon a girl under the age of 14 and sentenced to 15 years in prison. Carroll was released from the Department of Corrections' custody after serving 7 years, having fully satisfied the term of his sentence. Carroll's release was not conditional and there were no restrictions placed on his liberty; he was a free man.
Following Carroll's release, Teleois Ministries referred him to the Mission, a nonprofit organization formed to assist transients and/or ex-convicts in functioning as contributing members of society and to prepare those individuals spiritually, physically, and psychologically for productive reintegration. Carroll was a voluntary tenant and could leave at will. He paid rent in exchange for his room and board.
Carroll resided at the Mission for several months and then left to move in with his girlfriend. He returned a short time later and lived there until his arrest for McGowen's rape and murder.
Carroll was convicted of first degree murder and sexual battery on a child under the age of 12 and was sentenced to death. The Florida Supreme Court has upheld his conviction and sentence. See Carroll v. State, 636 So.2d 1316 (Fla.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 447, 130 L.Ed.2d 357 (1994).
Julie Rank, McGowen's mother and personal representative of her estate, filed a civil action for wrongful death against the Mission and Powell alleging that their negligence caused McGowen's death. The Estate alleged that because the Mission and Powell knew or should have known of Carroll's violent tendencies, they breached their duty of care to McGowen, or alternatively, they breached their duty to control Carroll's conduct.
*1088 The case was tried by jury. At the close of the Estate's case, the Mission and Powell moved for a directed verdict, arguing that the Estate had failed to establish a legal duty or right to control Carroll's behavior. The trial court denied their motion and the jury returned a verdict in favor of the Estate for $1.5 million. Following the trial, the Mission and Powell filed a motion for judgment in accordance with the directed verdict or new trial, which was denied.

THE LAW
Florida courts have refused to find that a party owes a duty to control the conduct of another absent a special relationship. See Garrison Retirement Home Corp. v. Hancock, 484 So.2d 1257, 1261 (Fla. 4th DCA 1985). Implicit in the "special relationship" exception to the general rule that no duty is owed is the proposition that the party must have the right or ability to control the third party's behavior. See Palmer v. Shearson Lehman Hutton, Inc., 622 So.2d 1085, 1089 (Fla. 1st DCA 1993); Garrison, 484 So.2d at 1261. Florida courts have adopted section 319 of the Restatement (Second) of Torts (1964) which states:
One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.
Garrison, 484 So.2d at 1261 (emphasis added).
To support its argument that the trial court was correct in finding a duty, the Estate primarily relies on Nova University, Inc. v. Wagner, 491 So.2d 1116 (Fla.1986), wherein the Florida Supreme Court held that a university, operating a residential rehabilitation program which accepted delinquent, emotionally disturbed and/or ungovernable children as residents, had a duty to exercise reasonable care in its operation to avoid harm to the general public. In that case, two juvenile residents who had exhibited a propensity toward physical violence, of which the defendants were aware or should have been aware, ran away from the center and the following day encountered two small children, one of whom they killed and the other whom they permanently injured. The complaint alleged that the defendants were negligent in failing to supervise and control the two delinquents assigned to their custody. In approving the Fourth District's decision reversing the trial court's summary judgment in favor of the university, the supreme court relied upon section 319 of the Restatement of Torts and concluded "that a facility in the business of taking charge of persons likely to harm others has an ordinary duty to exercise reasonable care in its operation to avoid foreseeable attacks by its charges upon third persons." Nova, 491 So.2d at 1118.
We find Nova materially distinguishable from the present case because Carroll was not in the custody or control of either the Mission or Powell. There were no restraints on his liberty. He lived at the Mission as a tenant. Much like many common landlord/tenant relationships, Carroll paid rent in exchange for his room and board. In contrast, in Nova, the children were not permitted to leave the premises without permission, and they, as minors, were supervised. Id. at 1117. Unlike Carroll, the minors in Nova had certain restraints placed on their liberty.[1] Thus, unlike here, the facility possessed the right to control the residents in Nova.
Under these circumstances, we find that because the Mission and Powell did not possess the right or ability to control Carroll, they did not owe a duty to the plaintiff. See Palmer, 622 So.2d at 1089; Garrison, 484 So.2d at 1261; see also Santa Cruz v. N.W. Dade Comm. Health Center, Inc., 590 So.2d 444, 445 (Fla. 3d DCA 1991) ("`[O]ne who takes charge' is one who has the right and the duty to control the petitioner's behavior, as would be true of a committed inpatient."), rev. denied, 599 So.2d 1278 (Fla.1992). To rule otherwise would improperly expand Nova and would create unsound public policy because nonprofit organizations, such as *1089 homeless shelters and halfway houses, would be reticent to assist released inmates if such a duty existed. Cf. Nova, 491 So.2d at 1118-19 (McDonald, J., dissenting) ("Exposing those willing to furnish child care services to liability for the actions of their wards against third parties will further curtail the number and quality of those willing to participate."). We therefore, reverse the judgment entered in favor of the Estate and enter judgment for the Mission and Powell.
REVERSED.
PETERSON, C.J., and GOSHORN and ANTOON, JJ., concur.
NOTES
[1] While it is true that the Mission had several "rules of the house" including a curfew, required church attendance, and appropriate dress, we do not find that the existence of these policies provides the necessary control over Carroll to establish a duty.