821 So.2d 1095 (2002)
Marlene SEELBINDER and James Seelbinder, etc., Appellants,
v.
COUNTY OF VOLUSIA, etc., Appellee.
No. 5D00-3308.
District Court of Appeal of Florida, Fifth District.
May 31, 2002.
Rehearing Denied August 2, 2002.
*1096 Mark A. Zimmerman, of James, Zimmerman, Paul & Huddleston, LLP, DeLand, for Appellants.
James W. Smith, of Smith & Schroder, L.L.P., Daytona Beach, and Jennifer S. Carroll and John M. Porter, of Law Offices of Jennifer S. Carroll, P.A., Palm Beach Gardens, for Appellee.
GRIFFIN, J.
Marlene and James Seelbinder, the plaintiffs below, appeal a directed verdict entered against them in an action for negligence.
On September 18, 1994, forty-seven-year-old Marlene Seelbinder ["Marlene"] was seriously injured when she was struck by lightning as she stood on a public beach on the north end of New Smyrna Beach in Volusia County, Florida. Marlene, her husband and two children had arrived around noon, used their season pass to gain entrance to the beach and parked in the "packed sand" near where the soft sand began. Marlene said that as the day wore on, she could see a storm moving in from the south, but it was down at the end of the beach and she was not worried about it. They ultimately decided to pack up and go because it started to sprinkle rain and the sky was "dark" to the south with an "approaching dark storm." However, the sky overhead was still clear and there were no dark clouds in the immediate vicinity. Marlene put the children in the car and got rid of the trash, while her husband went to get their son in from the water. They worked at a steady pace, but not as rapidly as they might have worked had they known there was a threat of lightning. She estimated it was about fifteen to twenty minutes from the time it started to sprinkle until she was struck at 3:29 p.m. Marlene never saw or heard any lightning before she was struck.
Marlene and her husband, James, filed suit against Volusia County ["the County"] on October 7, 1996, alleging that the County's beach lifeguards were negligent in failing *1097 to warn her of the risk of lightning. The complaint set forth that the County controlled the beach through its lifeguards; that the lifeguards monitored the beach for storm activity and would call a "red light" alert when they learned of an approaching storm; that a "red light" alert required the lifeguards to get all beachgoers out of the water and direct all beachgoers west of the traffic area into the soft sand area;[1] that on the day of the accident, the County was aware as of 3:01 p.m. that a lightning storm was approaching the beach from the southwest, but the County negligently failed to call a "red light" alert until 3:24 p.m. and that the County failed to warn Marlene of the hazard of remaining on the beach once "red light" conditions existed. At the close of the plaintiffs case, the County moved for a directed verdict on the issue of liability. During the defense case, the Court granted the motion, ruling that there was no evidence the County breached any duty to Marlene and that the County's acts or omissions were not the cause of Marlene's injuries. We agree and affirm.
The appellant mainly contends that the County's lifeguards were negligent in failing to give timely warnings to beachgoers in the vicinity of the lifeguard tower 641, including Marlene, that there was a storm in the vicinity producing lightning. Between the plaintiffs' and defendant's briefs, we have at least some analysis of virtually every extant theory of negligence that could conceivably apply to this case. We begin by joining the almost universally agreed view that the County, in its capacity as "landowner" or the equivalent, did not have a duty to warn invitees, including beachgoers that there was a risk of being struck by lightning. Caldwell v. Let the Good Times Roll Festival, 717 So.2d 1263 (La.Ct.App.1998); Grace v. City of Oklahoma City, 953 P.2d 69 (Okla.Ct.App.1997); Dykema v. Gus Macker Enters., 196 Mich.App. 6, 492 N.W.2d 472 (1992); Hames v. State, 808 S.W.2d 41 (Tenn.1991); Davis v. Country Club, Inc., 53 Tenn.App. 130, 381 S.W.2d 308 (1963). This view appears consistent with Florida law. See Wamser v. City of St. Petersburg, 339 So.2d 244, 246 (Fla. 2d DCA 1976).
If any duty to warn exists, it arises from the County's having undertaken to provide warnings of lightning to beachgoers. Having undertaken this responsibility, the County was obliged to exercise reasonable care in so doing. See, e.g., Metropolitan Dade County v. Dubon, 780 So.2d 328 (Fla. 3d DCA 2001). In this case, the County had set the following procedure:
Florida leads the country annually in the number of people struck by lightning. Lightning is a very dangerous natural phenomenon.... Because lightning is impossible to control or predict, it is necessary that no chances are taken with the public's safety. As a lightning storm approaches, the officer in charge of the zone will give the order to clear all swimmers out of the water. This condition, referred to as red light, will be relayed by the dispatcher to all lifeguards in the zone by radio transmission. Upon receiving the order to go on red light, all affected tower lifeguards should close their area to all water activity and attempt to direct any remaining beachgoers west of the traffic lane into the soft sand area....
The procedure consisted of the following:
The tower guards are to blow their whistle once or twice a few times in each direction to try to get the attention of beachgoers. Then they are supposed to *1098 get off the tower and pull the tower away from the water and up into the soft sand. After pulling up their towers, the lifeguards should use their whistle and flag to keep directing people away from the water and up toward the parked cars, hotels and condominiums and into the soft sand. The whistle can be heard for a couple hundred yards and the flags are bright orange.
In this case, the lifeguard several miles south of Unit 641 at Bethune Beach first reported an approaching storm. The south end supervisor authorized the Bethune Beach lifeguard discretion to declare a "red light" condition.
The supervisor of the north end, who had been a Volusia County Beach Patrol Officer over twenty-five years, testified that because of the distance, he would never call a red light based on a storm at Bethune Beach. He did call a red light for his area at 3:24 p.m. which he testified was ample to alert the public and close up:
The sky was still clear, and I was watching out west, basically looking west watching for lightning strikes and trying to time them, and I never saw anything worthy of being timed where there was a bright flash and could I look at my watch and time it.
Five minutes later (3:29 p.m.), they received the 911 call that Marlene had been struck by lightning.
The supervisor for the south end of New Smyrna Beach, including Bethune Beach, testified at trial that when he gave Bethune Beach direction at 3:14 p.m. to go to red light, he also told the south New Smyrna lifeguards to prepare for red light, meaning they were to stow their own gear and get ready to get bathers out of the water if "red light" was called. However, the storm that had caused the Bethune Beach red light authorization had barely skirted Bethune and had passed out into the open ocean. He put the south side lifeguards on red light at 3:26 p.m. because of a different storm moving in from the northwest. He described a rapid change from clear to sheets of rain around the time Marlene was struck.
The lifeguard at Unit 641 on the north end of New Smyrna Beach testified that he saw the storm from the south move out over open water. He was also watching some clouds starting to build up far off to the west. Around 3:20 p.m., he thought the storm was moving in his direction and he was directed to go on red light at 3:24 p.m. He thereafter followed the red light procedure, sounding his whistle to warn people in the water to get out. As he was blowing his whistle at a couple at the water's edge, the lightning bolt struck Marlene.
Appellant urges that the evidence creates a question for the jury to determine whether the County was negligent in failing to warn Marlene of the threat of lightning, but there is no evidence that the County lifeguards were negligent. To say that a jury question of negligence arises post hoc from the fact of a lightning strike would impose an unfair and undue burden on the County akin to strict liability. Moreover, all the evidence at trial indicates that the lightning that struck Marlene was generated from the western storm, not the southern storm, so the causal link based on the failure to exercise discretion to call a red light based on the presence of the southern storm is missing.
The County has undertaken to give beachgoers warnings of the risk of lightning that relies on human observation and weather station monitoring. Once an identified storm risk is deemed sufficient to warrant warnings, the procedure prioritizes those persons in the water. There was no evidence offered that the County's *1099 employees failed to exercise reasonable care in executing the procedure, merely that the procedure failed to protect Marlene.
AFFIRMED.
PLEUS and PALMER, JJ., concur.
NOTES
[1] Apparently, because the soft sand is dry, it is less likely to attract lightning.